E-FILED
Friday, 24 April, 2009  02:55:12 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | |
|---|---|
| JEANIE M. PELNARSH, | ) |
| Plaintiff, | ) |
| | ) No. 07-cv-1302 |
| v. | ) |
| R.R. DONNELLEY, | ) |
| Defendant. | ) |

## O P I N I O N  &  O R D E R

On November 13, 2007, the plaintiff, Jeanie Pelnarsh, filed a pro se complaint against her former employer, R.R. Donnelley, seeking relief for alleged sex discrimination under Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e et seq.[1]  Pelnarsh's Amended Complaint, filed on March 20, 2008, raises two federal claims.  First, Pelnarsh alleges that she experienced a hostile work environment due to pervasive sexual harassment by co-workers and supervisors during her employment at R.R. Donnelley.  Second, Pelnarsh alleges that R.R. Donnelley discharged her in retaliation for reporting the harassment to state and federal employment agencies.  In addition, the Amended Complaint includes parallel claims under the Illinois Human Rights Act.

Before the Court today is a motion for summary judgment filed by Defendant R.R. Donnelley on September 16, 2008 (Doc. 47).  Pelnarsh responded in opposition

---

[1] The initial complaint named as defendants certain of Pelnarsh's former co-workers and/or supervisors.  By Order of March 14, 2008, the Court dismissed the individual defendants, leaving only the corporate defendant.

to the motion on October 7, 2008, and Donnelley replied on October 22, 2008.  For the reasons stated below, the motion for summary judgment is GRANTED.

## BACKGROUND

Jeanie Pelnarsh began working full-time for R.R. Donnelley in late 1999 as a pressroom clerk at the company's facility in Pontiac, Illinois.  After a brief layoff in 2002, Pelnarsh was rehired by Donnelley as a material handler at the Pontiac facility.  In May 2002, Pelnarsh transferred to an administrative assistant position at the Pontiac facility's Digital Solutions Center (DSC).  While at the DSC, Joe Carlberg, a regional manager, served as Pelnarsh's supervisor.  According to Pelnarsh, during the course of her employment at Donnelley's Pontiac facility, she was the target of regular derogatory, sexually-charged remarks and unwanted touching by various male employees and supervisors.  Pelnarsh claims to have filed numerous company-internal complaints about the harassment, the last complaint occurring in August 2005.

On October 1, 2005, Pelnarsh transferred to a customer service position at Donnelley's Mendota, Illinois facility.  (7/29/08 Pelnarsh Dep. at p. 95).   She experienced no further sexual harassment after her transfer to Mendota.  (7/29/08 Pelnarsh Dep. at p. 239).  Pelnarsh alleges that, in December 2005, about two months after her transfer, she filed charges with the U.S. Equal Opportunity Commission (EEOC) and the Illinois Department of Human Rights (IDHR) in reference to the harassment she had experienced at the Pontiac facility.

On January 30, 2006, Donnelley terminated Pelnarsh's employment, citing improper use of her company credit card as the reason. Because Pelnarsh believed her termination to be in retaliation for her complaints and charges regarding sexual harassment at the Pontiac facility, she purportedly filed new charges with the EEOC and/or IDHR in February 2006, July 2006, and August 2006. (Ptf.'s SJ Resp. at ¶ 18). As will be discussed later in this Opinion, the documentary evidence on record reflects that Pelnarsh filed charges with the EEOC only on September 21, 2006. (7/29/08 Pelnarsh Dep., Ex. 30).

The facts surrounding Pelnarsh's termination from R.R. Donnelley are undisputed in all material respects. While working as an administrative assistant at the Pontiac facility's DSC, Pelnarsh received a company credit card from Donnelley ("Purchasing Card," "Procurement Card," or "P-Card"), which allowed her to purchase company supplies. The card was issued in Pelnarsh's name, but Donnelley was billed directly for all purchases. (7/29/08 Pelnarsh Dep. at 69). Donnelley maintained a written P-Card policy -- which Pelnarsh acknowledged by signature -- clearly stating that the card was not to be used for employees' personal purchases. (7/29/08 Pelnarsh Dep. at pp. 81-83, Ex. 14). In derogation of this policy, Pelnarsh regularly used the P-Card to pay for personal expenses, including her phone bill, her daughter's braces, furniture, legal fees in a custody battle, an iPod, and yard lights for her home. (7/29/08 Pelnarsh Dep. at pp. 69, 83, 106-110, 120, 129). Pelnarsh admits that she did not intend to reimburse the company for (or even keep track of) these personal purchases on the company's card, which

3

Donnelley totals at $57,625.26. (7/29/08 Pelnarsh Dep. at pp. 110-116, 120; 9/15/08 Bartolone Aff. ¶ 4).[2] Pelnarsh's purported explanation for this seemingly blatant abuse of the company credit card is that her supervisor, Joe Carlberg, told her that she could make any and all personal purchases that she wished, using the P-card, without reimbursing the company.[3] (7/29/08 Pelnarsh Dep. at pp. 110-116). The parties dispute whether Joe Carlberg knowingly approved these purchases or whether he simply did not scrutinize Pelnarsh's P-Card statements closely enough.

A financial audit by Donnelley in late 2005 revealed Pelnarsh's personal P-Card purchases. (9/15/08 Bartolone Aff. ¶ 3). Donnelley terminated Pelnarsh shortly thereafter. Subsequently, Pelnarsh pleaded guilty to theft, a Class 2 Felony in Illinois, and served 90 days in the LaSalle County Jail. (7/29/08 Pelnarsh Dep. at pp. 173-74, Ex. 27). Joe Carlberg was formally reprimanded (but not terminated) after the company concluded that he failed to carefully review Pelnarsh's P-Card statements. (9/15/08 Bartolone Aff. ¶ 10 & attachment dated 2/23/06).

In this federal action, Pelnarsh seeks to recover for the alleged sexual harassment she endured during her employment at Donnelley's Pontiac, Illinois facility. In addition, she seeks to recover for her termination, which she believes

---

[2] The P-Card policy also required an employee-cardholder to return the card in the event the employee switched departments. Apparently, Pelnarsh also violated this provision by failing to return the card upon her transfer to Donnelley's Mendota facility in October 2005.

[3] Specifically, at her deposition, Pelnarsh testified that Carlberg allowed her to use the P-Card for personal purchases in lieu of giving her a formal salary increase, which he was unable to do because of budget constraints. (7/29/08 Pelnarsh Dep. at p. 110).

4

was Donnelley's method of unlawfully retaliating against her for complaining about sexual harassment within the company.

## LEGAL STANDARD

Summary judgment should be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The non-movant cannot rest upon the allegations in the pleadings or upon conclusory statements in affidavits; she must support her allegations with proper documentary evidence. Chemsource, Inc. v. Hub Group, Inc., 106 F.3d 1358, 1361 (7th Cir. 1997). It is not the Court's function to scour the record in search of evidence to defeat a motion for summary judgment. Instead, the Court relies on the non-moving party to identify the evidence which creates an issue of triable fact. Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996).

The Court must "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." Holland v. Jefferson Nat. Life Ins. Co., 883 F.2d 1307, 1312 (7th Cir. 1989). In doing so, the Court is not "required to draw every conceivable inference from the record -- only those inferences that are reasonable." Bank Leumi Le-Isreal, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991). If the record before the Court "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. McClendon v. Indiana Sugars,

Inc., 108 F.3d 789, 796 (7th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  In order for the non-movant to prevail, "there must be evidence on which the jury could reasonably find for [her]." Brownell v. Figel, 950 F.2d 1285, 1289 (7th Cir. 1991).  However, in ruling on a motion for summary judgment, the Court may not weigh the evidence or resolve issues of fact; disputed facts must be left for resolution at trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

## ANALYSIS

Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Title VII is violated when sexual harassment in the workplace is so severe or pervasive that it alters the conditions of the victim's employment, creating a hostile or abusive working environment.  Faragher v. City of Boca Raton, 524 U.S. 775, 786 (1998).  In addition, Title VII contains an anti-retaliatory provision which prohibits employers from punishing employees who complain about practices that violate the statute. 42 U.S.C. § 2000e-3(a); Moser v. Indiana Dep't of Corrections, 406 F.3d 895, 903-04 (7th Cir. 2005).  In the instant action, Pelnarsh alleges a hostile work environment claim as well as a retaliation claim.

I.      Hostile Work Environment

Donnelley argues that Pelnarsh's hostile work environment claim is untimely. The Court agrees. Under Title VII, a plaintiff must file a charge with the EEOC either 180 or 300 days (depending on the forum state) after the occurrence of the unlawful employment practice at issue. 42 U.S.C. § 2000e-5(e)(1); Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 104-05 (2002). In Illinois, an individual must file an EEOC charge within 300 days of the alleged harassment, or else the claim is time-barred. Speer v. Rand McNally & Co., 123 F.3d 658, 662 & n.1 (7th Cir. 1997).[4] Because a Title VII hostile work environment claim necessarily involves the cumulative effect of repeated discriminatory conduct -- as opposed to a discrete act of discrimination -- the 300 day limitation period can be difficult to apply in some cases. The Supreme Court considered this issue in Morgan and held that "[i]n order for the charge to be timely, the employee need only file a charge within . . . 300 days of any act that is part of the hostile work environment." 536 U.S. at 118.

In the present case, Pelnarsh testified at her deposition that she experienced no incidents of sexual harassment after she transferred to Donnelley's Mendota, Illinois facility on October 1, 2005.[5] (7/29/08 Pelnarsh Dep. at pp. 95, 239). Giving

---

[4] As the Seventh Circuit Court of Appeals has observed, "[u]nder the applicable federal statute, a plaintiff has 180 days to file his claim, unless the forum state has an administrative agency to which the EEOC defers . . . . Illinois has such an agency -- the Illinois Department of Human Rights, or IDHR -- making the time limit 300 days rather than 180 days applicable . . . . ." Speer, 123 F.3d at 662 n.1.

[5] In her summary judgment response brief, Pelnarsh suggests that she was sexually harassed by Joe Carlberg after she transferred to the Mendota facility. (Ptf.'s SJ

7

Pelnarsh the benefit of the doubt by assuming that she experienced some act of sexual harassment at the Pontiac facility on September 30, 2005 (the day before her transfer), she was required to file a charge with the EEOC within 300 days: on or before July 27, 2006.  See Hedrich v. Bd. of Regents of the Univ. of Wis. Sys., 274 F.3d 1174, 1181 (7th Cir. 2001) (calculating the 300-day limitation period under 42 U.S.C. § 2000e-5(e)(1)); Arnold v. Janssen Pharmaceutica, Inc., 215 F. Supp.2d 951, 959 (N.D. Ill. 2002) (same).  It is undisputed that Pelnarsh filed a harassment charge with the IDHR and EEOC on September 21, 2006.  A copy of this "dual charge" is on the record; and, in fact, it is the only concrete documentary evidence of something purporting to be an official charge of discrimination filed by Pelnarsh with any relevant agency.  (7/29/08 Pelnarsh Dep., Ex. 30).

In her response brief, Pelnarsh asserts that she previously filed harassment charges with the EEOC and IDHR in December 2005, February 2006, July 2006, and August 2006.[6]  Given the cut-off date of July 27, 2006 for a harassment charge,

---

Resp. ¶ 17).  This suggestion is unsupported and is completely inconsistent with her deposition testimony.  (7/29/08 Pelnarsh Dep. at p. 239).

[6] Pelnarsh's alleged filings with the IDHR could be relevant with respect to timeliness because the IDHR automatically cross-files certain charges with the EEOC and because the two agencies' processing operations are very much intertwined pursuant to a work-sharing agreement.  The Seventh Circuit Court of Appeals has described the IDHR-EEOC work-sharing agreement in detail and has analyzed its effect on the timeliness of charges under 42 U.S.C. § 2000e-5(e)(1).  See Marlowe v. Bottarelli, 938 F.2d 807 (7th Cir. 1991); Hong v. Children's Mem'l Hosp., 936 F.2d 967 (7th Cir. 1991); Sofferin v. American Airlines, Inc., 923 F.2d 552 (7th Cir. 1991).  There is simply not enough evidence on the record regarding Pelnarsh's alleged filings with the IDHR and/or EEOC for this Court to engage in a meaningful analysis concerning the potential effect or relevance of the work-sharing agreement under the circumstances presented here.

8

only the alleged December 2005 – July 2006 filings would be relevant to the timeliness issue, vis-à-vis the hostile work environment claim.  These alleged filings will be considered in turn.

First, there is no evidence, besides Pelnarsh's own self-serving deposition testimony, that she filed a charge with the EEOC or IDHR in December 2005.[7] Second, other than Plaintiff's deposition testimony, the only evidence of a charge filed in February 2006 is correspondence authored by Pelnarsh in which she represents to others that she filed charges during that month.  (Exs. 67, 72 to Ptf.'s SJ Resp.).  Third and finally, in support of her allegation of a July 2006 charge, Pelnarsh has produced what purports to be an IDHR investigation report, dated "8/22/2007."  (Ex. 68 to Ptf.'s SJ Resp.).  The document indicates that a charge was filed on "07/21/06."  However, the document lists the IDHR's processing number for the charge as "2007CF0652," which is the exact same processing number for the charge that was undisputedly filed on "9-21-06."  (7/29/08 Pelnarsh Dep., Ex. 30). The Court agrees with Donnelley that the "07/21/06" date on Pelnarsh's Exhibit 68 was simply a typographical error.  No reasonable jury could find to the contrary without more evidence supporting a July 2006 charge.[8]

---

[7] Pelnarsh submitted an unsigned and un-notarized affidavit in support of her summary judgment response brief.  Because the affidavit is facially defective, the Court will not consider it.  See Fed. R. Civ. P. 56(e); see also Pfeil v. Rogers, 757 F.2d 850, 859 (7th Cir. 1985).

[8] It is notable that, at her deposition, Pelnarsh mentioned a December 2005 charge, a February 2006 charge, and a September 2006 charge, but failed to make any clear mention of a July 2006 charge (which she does then mention in her response brief).

9

While Pelnarsh rambles on about an alleged back-and-forth between the IDHR, the EEOC, and herself, regarding her phantom pre-September 21, 2006 harassment charges, there is virtually no documentary or other solid evidence to support this story.[9] The September 21, 2006 charge, which Pelnarsh alleges to be a "continuation" of previous charges, does not reference any earlier agency charges. Further, the only protected activity that Pelnarsh mentions in the September 2006 charge, in support of her retaliation claim, is her August 2005 internal complaint to Donnelley. If she believed, in September 2006, as she apparently does now (Ptf.'s SJ Resp. at p. 2), that she was fired due to her alleged December 2005 EEOC harassment charge, why didn't she make any mention of the December 2005 harassment charge in the September 2006 retaliation charge? Pelnarsh has no acceptable answer to this question.

Pelnarsh fails to understand that to survive summary judgment in federal court, a plaintiff has the burden of presenting evidence from which a reasonable jury could find for her. In an email responding to defense counsel's request for production of documentation relevant to the timeliness issue, Pelnarsh stated, "[P]lease do not concern yourself with such trivial matters." (Def.'s Exs. re Correspondence dated 9/12/08 and 9/15/08). Ironically, "such trivial matters" have cost Pelnarsh her hostile work environment claim, which is now barred due to a lack of evidence of a timely filed charge. The scintilla of evidence in support of

---

[9] Donnelley has submitted, as part of its appendix, a copy of the front of a U.S.P.S. package from Pelnarsh to the IDHR, which was apparently received by the IDHR on July 24, 2006. Neither party makes clear what was included in that package. As a result, the Court sees little probative value in the document.

Pelnarsh's alleged pre-September 21, 2006 EEOC and IDHR charges is insufficient to convince a reasonable jury that she satisfied Title VII's limitation period under 42 U.S.C. § 2000e-5(e)(1).  See Seshadri v. Kasraian, 130 F.3d 798, 802 (7th Cir. 1997) (confirming that witness testimony may be rejected on summary judgment if it is contradicted by the documentary evidence or if it is internally inconsistent or implausible); United States v. Kitsos, 770 F. Supp. 1230, 1237-38 (N.D. Ill. 1991) (confirming that a court is not required to "stand helpless" when a litigant purports to create an issue of fact by presenting "merely colorable" evidence that is insufficiently probative).  Therefore, there is no issue of triable fact as to the timeliness of Pelnarsh's hostile work environment claim.  The claim is time-barred, and summary judgment for Donnelley is appropriate.

II.   Retaliation

Pelnarsh alleges that Donnelley terminated her employment on January 30, 2006 in retaliation for her company-internal complaint and her external complaint to the EEOC and IDHR regarding sexual harassment at the company's Pontiac facility.[10]  A Title VII plaintiff may prove retaliation under the direct method or the indirect, burden-shifting method.  Moser, 406 F.3d at 904.  The direct method would require Pelnarsh to present evidence of a causal connection between her termination and her complaints about sexual harassment.  Id.  Pelnarsh attempts to satisfy the direct method by pointing out that she was fired approximately five months after an August 2005 internal complaint to Donnelley regarding sexual

---

[10] Donnelley does not expressly dispute the timeliness of the retaliation claim.

11

harassment.[11]  She offers nothing else.  It is clear in the Seventh Circuit that "mere temporal proximity is not enough to establish a genuine issue of material fact."  Tomanovich v. City of Indianapolis, 457 F.3d 656, 665 (7th Cir. 2006) (quoting Wyninger v. New Venture Gear, Inc., 361 F.3d 965, 981 (7th Cir. 2004)).

Pelnarsh's final possible avenue to prove-up retaliation is the indirect, burden-shifting method.  Under this method, a Title VII plaintiff must establish a prima facie case of discriminatory retaliation.  Establishing a prima facie case would require Pelnarsh to present sufficient evidence that she was meeting her employer's legitimate expectations at the time of her termination.  See Coolidge v. Consol. City of Indianapolis, 505 F.3d 731, 735 (7th Cir. 2007); Moser, 406 F.3d at 901.  It would also require her to present evidence that a "similarly situated person outside the protected class was treated better" than her.  See Adams v. Wal-Mart Stores, Inc., 324 F.3d 935, 939 (7th Cir. 2003).  If Pelnarsh were to establish a prima facie case, the burden would shift to Donnelley to articulate a legitimate non-discriminatory reason for terminating her.  If Donnelley met that burden, Pelnarsh would then have to show that Donnelley's stated reason for terminating her was mere pretext for unlawful retaliation.  Moser, 406 F.3d at 900-01.  To meet this last

---

[11] To the extent Pelnarsh attempts to advance the "temporal inference" argument, under the direct method, with reference to her alleged December 2005 IDHR and/or EEOC charge, the Court rejects this argument because (as explained in the previous section) there is insufficient evidence of any such charge.  Nor is there any reasonably sufficient evidence to support Pelnarsh's suggestion that Donnelley had knowledge of her purported intention to file an IDHR or EEOC charge soon before her termination.

requirement, Pelnarsh would have to show that Donnelley's proffered reason for terminating her was a lie.  Ineichen v. Ameritech, 410 F.3d 956, 961 (7th Cir. 2005).

Pelnarsh fails at every step under the indirect method.  She cannot show that she was meeting Donnelley's legitimate expectations at the time of her termination, as it is undisputed that she was terminated for making improper personal purchases on the company's credit card.  (7/29/08 Pelnarsh Dep. at pp. 106-121, 143-47; 9/15/08 Bartolone Aff. ¶¶ 3-4).  Pelnarsh pleaded guilty to felony theft because of this behavior.  (7/29/08 Pelnarsh Dep. at p. 173, Ex. 27).  Whether her supervisor, Carlberg, approved the purchases or not is of no instance because Pelnarsh had full knowledge of the company's official prohibition regarding personal purchases on the "P-Card."  (7/29/08 Pelnarsh Dep. at p. 81-83, Ex. 14).

Nor can Pelnarsh meet the "similarly situated" requirement, as she presents no evidence of Donnelley's treatment of a person similarly situated to her in all material respects.  Pelnarsh's supervisors -- who she alleges also made personal purchases on their P-Cards and were not fired -- are not similarly situated to her, at least as far as any fact-finder could reasonably tell, given the evidence Pelnarsh has presented.  For example, Pelnarsh herself represents that Joe Carlberg "was employed by the defendant for 15+ years and . . . previously held the Business Unit Manager position for the Pontiac Pressroom in 1999 thru [sic] 2000 and Department Manager Positions in Senatobia Mississippi for RR Donnelley prior to transferring back to Pontiac, Ill as Regional Department Manager."  (Ptf.s' SJ Resp. ¶ 6).  Pelnarsh did not have equivalent experience or qualifications similar to Carlberg at

the time she was terminated.  She was a lower level employee than Carlberg, performing different functions; she was and is not similarly situated to him for Title VII purposes.[12]  See Jordan v. City of Gary, 396 F.3d 825, 835-36 (7th Cir. 2005); Ineichen, 410 F.3d at 960-61.  Accordingly, Pelnarsh cannot make out a prima facie case of retaliation under Title VII.  And even if she could, she has offered no evidence tending to show that Donnelley's reason for terminating her employment was a lie aimed at getting back at her for her complaints about sexual harassment.  Given the evidence before the Court, no reasonable jury could find for the plaintiff, Pelnarsh, on the retaliation claim.  Therefore, summary judgment is appropriate.

   III.   Claims under the Illinois Human Rights Act

Pelnarsh's claims under the Illinois Human Rights Act (IHRA) are dismissed.  The Illinois Human Rights Commission has exclusive jurisdiction over claims arising under that Act.  See Talley v. Wash. Inventory Serv., 37 F.3d 310 (7th Cir. 1994); see also Glebocki v. City of Chicago, 32 Fed. Appx. 149, 154-55 (7th Cir. 2002) (district court did not have jurisdiction to hear claim brought under IHRA).

---

[12] Even more, Pelnarsh admitted at her deposition that she had no idea whether the other supervisors who allegedly used the P-Card for personal expenses reimbursed the company.  All she knows is that she did not reimburse Donnelley, during her employment, for her own personal purchases on the card.  (7/29/08 Pelnarsh Dep. at pp. 113-120).

14

## CONCLUSION

For the reasons stated above, Defendant R.R. Donnelley's motion for summary judgment (Doc. 47) is GRANTED.  No claims remain to be decided in this action.

CASE TERMINATED.

ENTERED this 24th day of April, 2009.

                                            s/ Joe B. McDade
                                            JOE BILLY MCDADE
                                        United States District Judge